# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CASE NO. 5:17-cr-22-16(MTT) |
| ) | |
| DEMOND MONTERIO DENNIS, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on Defendant Demond Monterio Dennis's Motion to Suppress Evidence seized in an inventory search conducted after a traffic stop and arrest on January 20, 2016. Doc. 285. The motion is **GRANTED in part**.

## I. FACTS[1]

The Court finds that the Government has established the following facts by a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).[2]

On January 20, 2016, Georgia State Patrol Trooper Patrick Prosser, while patrolling a residential street in Milledgeville, Georgia, noticed a blue Hyundai Elantra stopped at a stop sign at the intersection of Caraker Avenue and Elbert Street. Doc. 384 at 9:15-17. The driver of that vehicle, later identified as Defendant Dennis, was not wearing a seatbelt. *Id.* at 9:17-18. Prosser turned his vehicle around and returned to

---

[1] In finding these facts, the Court relies on the testimony at the April 19, 2018 hearing and the dash-cam video of the January 20, 2016 traffic stop, the first 25 minutes of which were admitted as Exhibit 1 at the hearing. Doc. 352; 352-1; *see generally* Doc. 384.

[2] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the intersection where Dennis was still stopped. *Id.* at 10:1-5. Prosser pulled alongside Dennis, noticed he still did not have his seatbelt on, and told him to pull into the parking lot next to the intersection. *Id.* at 10:8-10. Dennis instead drove across the street into a private driveway, prompting Prosser to activate his blue lights. *Id.* at 10:10-13. The vehicles came to a stop at a private residence, 202 Caraker Avenue, and, once stopped, Dennis attempted to exit his vehicle. *Id.* at 10:11-13, 10:15, 11:11-15; Doc. 352-1 at 1:16. Concerned both for his own safety and that Dennis may attempt to flee, Prosser approached Dennis on foot and ordered him to get back in the vehicle. Docs. 384 at 12:7-11, 34:2-5; 352-1 at 1:35. Prosser then asked for Dennis's driver's license, but Dennis stated he did not have it. Doc. 384 at 11:24-25, 11:14-15. Prosser placed Dennis in handcuffs and explained that he was being "detained until [Prosser] could verify who [he] was," and then Prosser conducted a *Terry* frisk of Dennis but found nothing. *Id.* at 11:24-12:1-2, 13:17-18; Doc. 352-1 at 1:45, 2:09.

When Prosser asked for Dennis's name, Dennis gave him the name "Nickolas Dennis," which Prosser later learned was Dennis's brother's name, and Dennis hesitated when asked his birthdate before telling Prosser he was born on December 25, 1990. Docs. 384 at 12:4-6, 13:2-3, 13:6-7, 22:24-25; 352-1 at 2:36-2:40, 4:20-4:40. Dennis told Prosser that he had a driver's license but, when Prosser ran that information on his computer, the search yielded a "driver not found" response. Docs. 384 at 14:9-10, 14:19-23; 352-1 at 5:50-6:35. Prosser warned Dennis that he could be arrested for obstruction for giving a false name and date of birth. Doc .384 at 15:2-4. Dennis then told Prosser his correct name and date of birth, and when Prosser ran that information he learned that Dennis's license was suspended and that he was wanted in Baldwin

County for a probation violation. *Id.* at 15:4-6, 15:10-12. After this, Prosser called for backup and Baldwin County deputies arrived, one of whom identified Dennis. *Id.* at 15:13-21. Learning Dennis's true identity and that his license was suspended, Prosser placed Dennis under arrest, performed a more thorough search of his person, finding nothing of significance, and detained Dennis in the patrol car. *Id.* at 16:1-4, 16:7-15.[3]

In the course of arresting Dennis, Prosser learned that the car was uninsured and its tag had expired.[4] *Id.* at 17:22-17:1. Prosser did not determine if Dennis had an interest in the nearby abandoned properties. *Id.* at 40:1-8, 40:16-20. However, Prosser did learn that the occupant of the only inhabited nearby residence did not know Dennis. *Id.* at 39:22-23, 40:1-8. Based on the circumstances, Prosser determined he would have the vehicle towed, which, he said, necessitated an inventory search of the vehicle's contents. *Id.* at 39:2-4, 39:7-8. Accordingly, Prosser proceeded to list the items in the vehicle using an inventory sheet he had with him.[5] *Id.* at 23:13-14, 42:1-4.

Prosser testified that the Georgia State Patrol had a "standard procedure" for inventorying impounded vehicles. *Id.* at 17:3-5. Although the Government did not introduce that procedure, Prosser testified that

> [I]f we arrest the driver, owner of the vehicle, or if we work a crash, what we do is we do an inventory of the vehicle. List all the items inside so whenever we did release that vehicle to the wrecker driver, all items are listed, and – for safekeeping.

---

[3] The Government properly does not contend that the search of the vehicle was incident to Dennis's arrest. Once Dennis was detained in the patrol car, "there [was] no possibility that [he] could reach into the [area of the vehicle searched by officers]," and thus "both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Arizona v. Gant*, 556 U.S. 332, 339 (2009).

[4] There was no evidence of who owned the vehicle or whether Dennis had permission to use the vehicle. On the video, Prosser asked Dennis who owned the vehicle, but Dennis's answer is unintelligible. Doc. 352-1 at 11:05-11:35. The Government does not contest Dennis's standing to challenge the search.

[5] The Government did not tender the inventory sheet into evidence.

*Id.* at 16:23-17:2.

When asked, "[w]hat if anything was located" during the inventory search, Prosser responded: "I located a crushed cigarette box underneath the driver's seat. Inside the box, after further investigation, there was found three suspected crack rocks that was inside the cigarette box itself." *Id.* at 17:12-16. Later, Prosser testified that "the contraband was found inside of the vehicle. There was a crushed cigarette box underneath the driver's seat. I placed it in the center console. And if you look on my incident report, it was found in the center console."[6] *Id.* at 44:22-25.

Although Prosser clearly testified that he found the crushed cigarette box, he did not say directly who discovered the drugs but, rather, again, said only that the drugs were discovered upon "further investigation." *Id.* at 17:12-16. The dash-cam video establishes that the drugs were found by an unidentified local law enforcement officer, presumably one of the deputies who arrived shortly after Prosser stopped Dennis. Doc. 352-1 at 17:33-18:00. The video shows Prosser searching the front seat and then the back seat from the driver side of the vehicle. *Id.* While Prosser searched the back seat, the unidentified officer, apparently without being asked, began searching the front seat from the passenger side of the vehicle. *Id.* Although it cannot be seen what the officers are doing inside the vehicle, Prosser's microphone picked up the unidentified officer exclaiming, "Look here! Three bags. White powder. Three bags. . . . Found in the

---

[6] At the hearing, Dennis disputed that the Government had produced Prosser's incident report. However, the Government had previously provided the Court with a copy of the discovery given to defense counsel, and the Court quickly determined that the Government had, in fact, produced the report. Although the report was not introduced into evidence, its account of the discovery of the drugs is consistent with Prosser's testimony:

> While inventorying the vehicle a crushed cigarette box was found under the driver's seat and placed on the center console. Upon further investigation of the cigarette box three small plastic bags containing what appeared to be cocaine were found inside.

-4-

cigarette pack. Yes sir, yes sir, three bags full. . . . In the console, inside a cigarette pack." *Id.* at 17:20-17:55. Prosser then put the cigarette box on the hood of his patrol car to document for the dash-cam what had been found. *Id.* at 17:49-18:11. Based on this, the Court concludes that Prosser, as he testified, found the crumpled cigarette box under the driver's seat as he was searching the front seat area. He placed the cigarette box on the console and then began searching the rear seat. The unidentified officer then, for some reason, assisted in the search, and it was upon his "further investigation" that the cigarette box was opened and the drugs were discovered. There is no evidence that the unidentified officer knew anything about the Georgia State Patrol's inventory search procedure or policy.

Prosser himself did not charge Dennis with a crime related to the drugs but issued a citation for the following traffic violations: (1) seatbelt violation; (2) driving with a suspended license; (3) no proof of insurance; (4) and expired tag. Doc. 384 at 17:22-18:1. Prosser contacted Agent Genie Stricklin of the Ocmulgee Drug Task Force and turned the drugs over to her. *Id.* at 18:4-7. Once the search of his vehicle was concluded, Dennis was transported to the Baldwin County Sheriff's Office and interrogated by Agent Stricklin.[7] In the interrogation, Dennis was largely uncooperative but did make several incriminating statements regarding the evidence seized from his car.

On May 11, 2017, Dennis and 15 other Defendants were named in a 51-count indictment (Doc. 1), and a superseding 60-count indictment was filed on September 21,

---

[7] In Dennis's motion, he argued that he was not properly *Mirandized* and that, accordingly, his statements during the interrogation should be suppressed. *See generally* Doc. 285. He withdrew this argument at the April 19 hearing and neither party admitted the video of the interrogation into evidence. Doc. 384 at 4:18-24; 5:11-15.

2017 (Doc. 249). In the superseding indictment, Dennis was charged with conspiracy to distribute cocaine and two counts of distribution of cocaine base, one of which, Count 58, relates to the January 20, 2016 traffic stop. Doc. 249 at 2, 35. Dennis now moves to suppress the evidence found in his vehicle during the January 20, 2016 traffic stop and any statements made in the interview that followed, claiming that the search was unconstitutional.

## II. MOTION TO SUPPRESS STANDARD

The movant bears the initial burden of persuading the court, through specific factual allegations and supporting evidence, that the evidence should be suppressed. *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). Once the movant establishes a basis for the motion, the burden then shifts to the Government to prove by a preponderance of the evidence that the search or seizure of evidence was legally and factually justified. *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (citation omitted) ("Upon a motion to suppress evidence garnered through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution. The Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the [F]ourth [A]mendment."); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) (citation omitted) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

## III. DISCUSSION

In his motion, Dennis argues that the traffic stop and arrest were unlawful. *See generally* Doc. 285. However, in his post-hearing brief, Dennis appropriately focuses on the inventory search, claiming that it was not properly conducted but, rather, was a ruse for an investigatory search. *See generally* Doc. 354. Because, as the Court has found, Dennis was not wearing a seatbelt, the traffic stop was lawful. And, as the Court has also found, Dennis was driving with a suspended license, did not have proof of insurance on his vehicle, and his tag was expired, he was properly arrested. Further, and although Prosser does not mention this as a basis for arrest, Dennis's outstanding warrant for probation violations would lead a reasonable officer to take him into custody. The remaining questions are whether the vehicle was properly impounded and, if so, whether the Government has established that officers properly seized drugs concealed in a cigarette box found during the purported inventory of the contents of the vehicle. The answer to the first question is yes; the answer to the second is no.

### A.  Inventory Search

Ordinarily, under the Fourth Amendment, law enforcement must obtain a warrant supported by probable cause to conduct a search of a suspect's property or person. *United States v. Magluta,* 418 F.3d 1166, 1182 (11th Cir. 2005). However, as a part of law enforcement's "community caretaking functions," automobiles may be impounded and the contents inventoried without a search warrant. *South Dakota v. Opperman*, 428 U.S. 364, 369-70 (1976). "[T]hree distinct interests . . . justify the inventory search of a vehicle upon impoundment: (1) the protection of the owner's property while it remains in police custody; (2) the protection [of] the police against claims or disputes over lost or

stolen property; and (3) the protection of the police from potential danger." *United States v. Handy*, 592 F. App'x 893, 906 (11th Cir. 2015). "When analyzing the reasonableness of an inventory search, a court must determine (1) whether the police had the authority to impound the vehicle, and (2) whether the officers followed procedures governing inventory searches." *United States v. Foskey*, 455 F. App'x 884, 889 (11th Cir. 2012) (citing *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991)). "[B]ecause an inventory search is an exception to the Fourth Amendment's warrant requirement, . . . [the government] has the burden to show that the requirements of the inventory search exception have been met." *Sammons v. Taylor*, 967 F.2d 1533, 1544 (11th Cir. 1992) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971)).

Dennis contends that it was improper to impound his vehicle because it was "parked in a private area without any indication that it was a safety hazard or unwanted as an intrusion or nuisance to the property owners." Doc. 354 at 7. Further, Dennis argues that the Government failed to provide "clear details about the department's policy for towing or inventorying." *Id*. That argument has some appeal; particularly, as will be discussed, the second part—that the Government failed to adduce evidence of how the inventory was to be done. As to Dennis's first point, however, it is clear that the evidence established that Prosser properly concluded it was necessary to impound the vehicle.

"[T]he government need not show that a written policy, city ordinance, or state law supports [an] impoundment" but merely "demonstrate that an 'established routine' or 'practice' exists authorizing impoundment." *Foskey*, 455 F. App'x at 890 (quoting *Wells*,

495 U.S. at 4). And law enforcement officers may impound vehicles for various reasons, including to allow police officers time to determine whether a vehicle has been stolen or when circumstances present an "appreciable risk of vandalism or theft" even if the vehicle is "lawfully parked [and] presents no hazard to public safety." *Id.* at 889 (quoting *Opperman*, 428 U.S. at 369 and *Williams*, 936 F.2d at 1248-49). Here, Dennis, because of his arrest, clearly could not remove the vehicle from the scene, and, as far as Prosser knew, the vehicle was not insured. Doc. 384 at 16:23-24, 38:22-23. Moreover, the vehicle was on private property and the only nearby resident Prosser was able to locate said he did not know Dennis. *Id.* at 38:22-23, 39:1-8. Under these circumstances, the Court concludes, easily, that the Government has established that the vehicle was properly impounded. *Id.* at 38:22-23, 39:1-8, 39:16-20.

Even if, as Dennis argues, it may have been safe to leave the car where it was parked, that other less intrusive means, besides impoundment, could have been employed to prevent theft and ensure public safety does not necessarily render the decision to impound the vehicle unreasonable. *See Illinois v. Lafayette*, 462 U.S. 640, 647-48 (1983) ("The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means."). Again, Prosser's decision to impound the car and perform an inventory search was, "under all the circumstances, within the realm of reason." *Sammons*, 967 F.2d at 1543 (quotation marks and citations omitted); *see also Handy*, 592 F. App'x at 907.

However, the absence of a written procedure becomes more problematic when considering whether the drugs were discovered during the course of an appropriate inventory of the vehicle's contents. The Supreme Court has required that inventory

495 U.S. at 4). And law enforcement officers may impound vehicles for various reasons, including to allow police officers time to determine whether a vehicle has been stolen or when circumstances present an "appreciable risk of vandalism or theft" even if the vehicle is "lawfully parked [and] presents no hazard to public safety." *Id.* at 889 (quoting *Opperman*, 428 U.S. at 369 and *Williams*, 936 F.2d at 1248-49). Here, Dennis, because of his arrest, clearly could not remove the vehicle from the scene, and, as far as Prosser knew, the vehicle was not insured. Doc. 384 at 16:23-24, 38:22-23. Moreover, the vehicle was on private property and the only nearby resident Prosser was able to locate said he did not know Dennis. *Id.* at 38:22-23, 39:1-8. Under these circumstances, the Court concludes, easily, that the Government has established that the vehicle was properly impounded. *Id.* at 38:22-23, 39:1-8, 39:16-20.

Even if, as Dennis argues, it may have been safe to leave the car where it was parked, that other less intrusive means, besides impoundment, could have been employed to prevent theft and ensure public safety does not necessarily render the decision to impound the vehicle unreasonable. *See Illinois v. Lafayette*, 462 U.S. 640, 647-48 (1983) ("The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means."). Again, Prosser's decision to impound the car and perform an inventory search was, "under all the circumstances, within the realm of reason." *Sammons*, 967 F.2d at 1543 (quotation marks and citations omitted); *see also Handy*, 592 F. App'x at 907.

However, the absence of a written procedure becomes more problematic when considering whether the drugs were discovered during the course of an appropriate inventory of the vehicle's contents. The Supreme Court has required that inventory

searches be conducted pursuant to "standardized criteria or established routine." *Handy*, 592 F. App'x at 906; *see also Colorado v. Bertine*, 479 U.S. 367, 374 (1987) ("[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment."). Officers are afforded some discretion in conducting an inventory search, but an "officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime." *Handy*, 592 F. App'x at 906 (quoting *Wells*, 495 U.S. 1, 4). A policy or procedure governing inventory searches, and the search itself, must effectuate the goals behind the inventory exception to the Fourth Amendment's warrant requirement: "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Wells*, 495 U.S. at 4 (citing *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)). "The policy or practice governing inventory searches should be designed to produce an inventory." *Id.* An "inventory search must not be a ruse for a general rummaging in order to discover criminal evidence." *Handy*, 592 F. App'x at 906 (quoting *Wells*, 495 U.S at 4).

Prosser's very general description of the Georgia State Patrol's standard procedure is consistent with the common understanding of the purpose of inventory searches. "[W]hat we do is an inventory of the vehicle. List all the items inside so whenever we did release that vehicle to the wrecker driver, all items are listed, and – for safe keeping." Doc. 384 at 16:24-17:2. But the officers did more than that here. Prosser found what, from his description, was trash—a crushed cigarette box. He placed that crushed cigarette box on the console and later, "after further investigation," the crushed cigarette box was opened by the unidentified officer, who, as far as is

-10-

known, knew nothing about the inventory procedures, and drugs were found. *Id*. at 17:12-16. Whether, as the Court has found, the unidentified officer opened the cigarette box upon his further investigation or whether Prosser investigated further and opened the box, there is no evidence shedding light on whether that further investigation was an appropriate part of the inventory of the vehicle's contents.

If the crushed cigarette box is considered a container, it can be appropriate for officers inventorying a vehicle to open closed containers. *Wells*, 495 U.S. at 4; *Sammons*, 967 F.2d at 1544 (stating that law enforcement officers, without a warrant, "may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria"). Any "standardized criteria or established routine" that governs how such an inventory search is conducted must "regulate the opening of containers found during inventory searches." *Handy*, 592 F. App'x at 906 (quoting *Wells*, 495 U.S. at 4); *see also Bertine*, 479 U.S. at 369–70, 374 n.6, 376 (upholding an inventory search that included the search of closed containers where "the Police Department's procedures mandated the opening of closed containers and the listing of their contents" and noting that the Supreme Court's "decisions have always adhered to the requirement that inventories be conducted according to standardized criteria").

It cannot be left wholly to a law enforcement's discretion in determining whether to open a closed container during an inventory search. *Wells*, 495 U.S. at 4. Although, again, a police officer is allowed some discretion, including "sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself," the Government must

produce evidence of a standardized policy or routine that guided the officer's decision. *Id*. And the burden is on the Government to provide evidence of that policy so that the Court can determine if the search was conducted in accordance with that policy or whether, if the officer exercised discretion to deviate from that policy, any deviation from the policy was reasonable under the facts and circumstances. *See Wells*, 495 U.S. at 4-5 (ruling that, absent an inventory policy, the search at issue "was not sufficiently regulated to satisfy the Fourth Amendment and that [evidence found therefrom] was properly suppressed").

Thus, whether the Government has proven that the unidentified officer properly opened the cigarette box depends on whether he acted according to standardized criteria or established routine or, if he used his discretion to veer from that policy, whether it was reasonable to do so. *See United States Khoury*, 901 F.2d 948, 958 (11th Cir. 1990) (ruling it was error to deny a motion to suppress evidence from an inventory search where the Government provided no evidence "that the inventory search followed a standardized procedure pursuant to regulatory strictures" despite the investigating officer's assertion that "the search was performed as a matter of course when a vehicle was impounded and the investigating officer was not at liberty to decline to inventory the contents") *ruling modified on other grounds by United States v. Khoury*, 910 F.2d 713 (11th Cir. 1990).

Here, there is no evidence of the inventory policy other than Prosser's very general description, and, in any event, there is no evidence the unidentified officer knew what that policy was. In short, the Court simply has no evidence that would allow it to conclude that when the unidentified officer "further investigat[ed]" the crumpled cigarette

-12-

box he was acting within the scope of or was guided by the Georgia State Patrol's standard procedures. On the contrary, the scant available evidence of the standard procedures suggests that the officer's "further investigation" went beyond simply listing items for safekeeping. In fact, the evidence suggests that Prosser found the crushed cigarette box to be of no particular significance in his inventory of the vehicle and that is the reason he simply placed it on the console. The further investigation by the unidentified officer was just that—a further investigation beyond the scope of an inventory search, as described by Prosser, that led to the discovery of the drugs. Perhaps there was a legitimate reason for the unidentified officer to open up a crumpled cigarette box when Prosser had not, but there is no evidence of what that reason may be.[8]

The Government has not met its burden. Accordingly, the evidence seized from Dennis's vehicle during the January 20, 2016 inventory of that vehicle must be suppressed.[9]

**B.     Other Evidence Stemming from the Unlawful Search**

As stated, Dennis made incriminating statements during the January 20, 2016 interrogation following the unlawful inventory search, and the Government seized and searched Dennis's cell phone. Dennis withdrew his arguments to suppress the interrogation except "to the extent [the interrogation] would be tainted by the overall stop . . . [as] fruit of the poisonous tree." Doc. 384 at 4:18-24, 5:11-15. In his post-hearing

---

[8] If Prosser had opened the box, the Government has much the same problem. Presumably, he knew about the policy, but there is still no evidence that would allow the Court to determine that uncrumpling the cigarette box was consistent with Georgia State Patrol's inventory policy or that Prosser acted reasonably if, in doing so, he used his discretion to veer from the policy. *See Khoury*, 901 F.2d at 958.

[9] The Court notes that the Government did not argue the doctrine of inevitable discovery applies in this case. And based on the evidence, the Court does not think it could have legitimately done so.

brief, Dennis clarified his argument that the statements and evidence from the cell phone should be suppressed because their discovery resulted from the unlawful search.

Evidence deemed to be derivative of an illegal search must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963); *Nardone v. United States*, 308 U.S. 338, 341 (1939). The burden is on the Government to prove that evidence was "not obtained as a direct result of the illegal search." *United States v. Crosby*, 739 F.2d 1542, 1549 (11th Cir. 1984). That the unlawful search was the "but for" cause of the evidence being discovered does not demand suppression. *United States v. Timmann*, 741 F.3d 1170, 1182 (11th Cir. 2013). Rather, evidence will not be suppressed under the "fruit of the poisonous tree" doctrine if the Government "demonstrate[es] a break in the causal chain" that "dissipate[s] the taint of the officer's unlawful search." *Id.* (citations and quotation marks omitted). This can be done through establishing that: (1) the evidence was attenuated from the illegality by intervening events or independent circumstances; (2) the Government obtained the evidence from a source independent of the illegality; or (3) the Government "inevitably would have discovered [the evidence] without the aid of the unlawful police conduct." *Id.* at 1282-83.

### 1. Dennis's Cell Phone

No evidence has been admitted regarding what was seized from Dennis's cell phone. Therefore, the Court cannot make an ultimate determination as to whether that evidence is linked to the unlawful search. However, the Court has found that Dennis was lawfully arrested for the various traffic violations cited by Trooper Prosser. And the Court presumes that the cell phone would have been seized because of this arrest.

Thus, this lawful arrest could be sufficient to attenuate the seizure of the cell phone from the unlawful search. *See id.* But the question remains whether the phone would have been searched in the same manner if not for the unlawful search of Dennis's vehicle. The Court does not reach that question here.

### 2. Statements from the January 20, 2016 Interrogation

Fruits of the poisonous tree can include "admissions or confessions that the police induce by confronting a suspect with evidence obtained through an illegal search or seizure must be suppressed." *Timmann*, 741 F.3d at 1182 (citing *Fahy v. State of Conn.*, 375 U.S. 85, 91 (1963)). When a suspect makes incriminating statements following an illegal search, the court must determine "the extent to which the police conduct caused the defendant's response." *Id.*

The Eleventh Circuit has recognized "several factors which are relevant to determining whether the defendant's behavior was a product of the illegal police action," including "the temporal proximity of the arrest and the defendant's response, the presence or absence of intervening circumstances, and the purpose and flagrancy of the official misconduct." *Id.* (quoting Crosby, 739 F.2d at 1549). Ultimately, the court must determine "whether the officers exploited the fruits of their unlawful conduct in order to elicit [the defendant's] statements." *Id.* at 1284 (ruling that a defendant's "admissions were the direct result of the officers' "exploitation" of the unlawful search, and must be suppressed as fruit of the poisonous tree" (quoting *Wong Sun*, 371 U.S. at 488)).

Here, the video of the interrogation was not admitted into evidence, and, therefore, the Court cannot make an ultimate determination regarding any statements

made by Dennis during the interrogation. However, to the extent any questions in the interrogation relate to the drugs found in Dennis's car—the fruit of the unlawful search—those statements almost certainly must be suppressed.

## IV. CONCLUSION

Dennis's motion to suppress (Doc. 285) is **GRANTED in part**.[10] The drugs seized during the January 20, 2016 inventory search of Dennis's vehicle are suppressed. The Court reserves making a definitive conclusion regarding the admissibility of the evidence seized from the cell phone and Dennis's statements during the interrogation pending the parties conferring on these issues in light of this order.

**SO ORDERED**, this the 14th day of June, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[10] Defendant Deshawn Ransom moved to adopt Dennis' motion to suppress (Doc. 287); however, that motion has since been withdrawn (Doc. 322).